ETHEL CLAY et al *v.* HELEN BENTON, ADM'X

5-5353                                    453 S. W. 2d 405

Opinion delivered May 11, 1970

*Curtis Ridgeway,* for appellants.

*Street & Plunkett,* for appellee.

LYLE BROWN, Justice. This appeal concerns the interpretation of a will. Appellants, being six of the many nieces and nephews who were beneficiaries, contend that they were bequeathed all bank stock owned by the testatrix. The trial court did not so interpret the will and appellants press the single point that the will created an exclusive bequest to them as respects all the bank stock.

That part of the brief holographic will with which we are concerned reads:

Feb. 16th, 1957. I, Effie Jeanette Heard of 175 So. St. S. W. Camden (Cullendale Station), Arkansas, Ouachita County, I declare this to be my last will and testament.

To brother Johns boys Lawton and Loonie I give five (5) dollars each and to each of brother Johns girls I give (10) ten dollars each. To Eulis Z. Munds I give my home and all its contents. The

rest of my possessions to be given to the other nieces and nephews, divided equally.

I want my bank stock to be divided between Ethel, Gladys, Opal, Corinne, Max and Margaret and they are to keep it at least 2 years and then if they decide to sell it, to sell to some of the other nieces or nephews. In other words keep it in the family as I know it is a good investment. This is not to be extra or more than the rest but part of their part of my possessions.

The appellants who are contending for the bank stock are those nieces and nephews named in the last recited paragraph.

The chancellor held that the testatrix intended to accomplish three paramount purposes:

(1) To leave a small, specific amount of money to the surviving children of Brother John;

(2) To devise her home and its contents to her nephew, Eulis Z. Munds; and

(3) That all the rest and remainder of her estate at the time of her death was to be divided equally between her other nieces and nephews, share and share alike.

It is entirely probable that at the time Mrs. Heard executed the will her estate was such that the named nephews and nieces could have taken their shares in bank stock and their respective bequests would not have exceeded their proportionate share. But the status of Mrs. Heard's estate changed considerably before her death in 1968. In 1957 (the date of the will) she had 240 shares of stock in Malvern National Bank. Mrs. Heard subsequently became the owner of 240 additional shares of bank stock at no direct cost to her. The bank issued the stock from stock dividends which had accumulated in the undivided profits over a period of

several years. Consequently, more than fifty per cent in value of her estate at the time of her death consisted of the bank stock. There were seventeen nieces and nephews (other than John's children and Eulis Munds) who were entitled to share equally in the residuary estate; therefore, had all the stock been divided equally between the *named* nieces and nephews they would have received far more than their proportionate share. In order to conform to the specific direction of equal division and at the same time endeavor in a practical way to keep the bank stock in the family, the chancellor decreed this manner of stock distribution:

> [T]hat the six persons named in the will shall have the right to elect to have stock issued to each of them at $102.00 per share value up to the amount, or approximate amount, of their distributive share. After these six have made their election, then any of the other eleven nieces and nephews shall have the same right of election to the extent of the remaining shares of bank stock.

The mechanics of distribution of the bank stock as set up by the chancellor is not attacked on appeal. We therefore conclude that if the equal distribution of the residuary estate be found by us to be correct, then there is no objection to the manner in which it was distributed.

The testatrix, in no uncertain terms, made it very clear that the remainder of her estate, after the specific bequests in the first paragraph, was to be divided equally among the remaining seventeen nieces and nephews. That direction is stated in the first paragraph. Then in expressing her wishes about distribution of the bank stock, she added a precautionary sentence which dispelled any idea of unequal distribution. "This [bank stock] is not to be extra or more than the rest but part of their part of my possessions." The paramount rule of construction of a will is to ascertain the intent of the maker and preferably from the four corners of the instrument. Guided by the recited rule we can reach but

one conclusion and that is a bequest of equal distribution of the residual.

Affirmed.